PEOPLE v GUEVARA

Docket No. 87037. Submitted January 23, 1986, at Detroit. Decided
    April 21, 1987.

Esequiel Guevara was convicted, on his plea of nolo contendere,
    of four counts of armed robbery, Monroe Circuit Court, James
    J. Kelley, Jr., J., and was sentenced to concurrent terms of
    from twenty-five to seventy-five years in prison. Defendant
    appealed.

The Court of Appeals *held:*

1. The trial court's statement that the guideline minimum
    range was too low, combined with its articulation of reasons for
    the sentence imposed, were sufficient to sustain a deviation
    from the guidelines with respect to the minimum sentence.

2. The sentence did not shock the judicial conscience.

Affirmed.

M. J. KELLY, J., dissented. He found his conscience shocked
    and would remand for resentencing.

CRIMINAL LAW — SENTENCING.

It is not error for a sentencing court to depart from the sentenc-
    ing guidelines where the court is of the opinion that a mini-
    mum sentence within the guideline range is inappropriate,
    provided the court states adequate reasons for the departure on
    the record.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *William F. Lavoy,* Prose-
cuting Attorney, and *Lawrence J. VanWasshe-
nova,* Assistant Prosecuting Attorney, for the peo-
ple.

*James H. Davies,* for defendant on appeal.

REFERENCES

Am Jur 2d, Criminal Law § 538. Comment Note.—length of sen-
    tence as violation of constitutional provisions prohibiting cruel
    and unusual punishment. 33 ALR3d 335.

Before: M. J. KELLY, P.J., and SHEPHERD and M. R. KNOBLOCK,* JJ.

M. R. KNOBLOCK, J. Pursuant to a plea bargain, defendant pled nolo contendere to four counts of armed robbery, MCL 750.529; MSA 28.797. He was sentenced to concurrent prison terms of from twenty-five to seventy-five years on each count and appeals as of right, raising two issues.

Defendant first claims that the sentencing judge abused his discretion in sentencing him to a minimum term which exceeds the range specified by the sentencing guidelines and in failing to state reasons for this departure on the record. We find this claim to be without merit.

In accordance with the plea bargain agreement, in exchange for defendant's nolo contendere plea, the prosecutor did not proceed on a companion felony-firearm charge and recommended to the court that the minimum sentence not exceed twenty-five years. The sentencing guidelines specified a minimum range of five to eight years. At sentencing the trial judge acknowledged that he was exceeding the guidelines range:

> I notice the sentencing guide line report is five year to eight years—sixty months to ninety-six months, and whoever wrote that up set that—set the guides to determine that as the guide line sentencing range is just not acquainted with reality. Apparently they think robbery is some sort of a game that's played.
>
> To discipline the defendant in as much as he's not been inclined to impose self-discipline, and as a deterrent to discourage others from committing this type of offense, and to punish the defendant for committing a crime, and to provide an environment in which the defendant may obtain or en-

* Circuit judge, sitting on the Court of Appeals by assignment.

hance vocational skills, and to place the defendant in an environment where controlled substances will not be available, we hope, and to protect society from his criminal tendencies, the following sentence is imposed. The court noting that this type crime is too prevalent in this community, and also noting that the very light supervision afforded by probation is deemed insufficient to control his tendencies toward antisocial behavior. In each of these—for each of these convictions the defendant is sentenced to serve the following in the state prison: not less than twenty-five years nor more than seventy-five years. These sentences shall be served concurrently, and against each the defendant shall be credited with the number of days he was incarcerated prior to today . . . .

Clearly, the sentencing judge was of the opinion that the sentencing guidelines range was too low and, in fact, appeared to be offended by its leniency. Considering the fact that defendant was convicted of four separate counts of armed robbery, all of which provide for maximum possible sentences of life imprisonment, and considering his prior record as disclosed by the presentence report, including a 1977 conviction for murder, we cannot quarrel with this conclusion. It is not error for the sentencing court to depart from the guidelines if the court is of the opinion that a minimum sentence within the guideline range is inappropriate, provided the court states adequate reasons for the departure on the record. *People v Fleming,* 142 Mich App 119; 369 NW2d 499 (1985);[1] Sentencing Guidelines, Departure Policy, Ch 27, ¶ 3. We find the trial court's statement that the guideline range was too low, combined with its articulation of reasons for the sentence imposed, to be a minimally sufficient explanation of why, in the trial

---

[1] Cf. *People v Good,* 141 Mich App 351; 367 NW2d 863 (1985).

court's opinion, justice required a sentence outside the guideline sentence range.

Finally, considering the gravity of the four offenses of which defendant was convicted, his prior violent and assaultive record, and that the prosecutor's recommendation pursuant to the plea agreement was not exceeded, we find defendant's claim that the sentence imposed shocks the conscience to be without merit.

Affirmed.

SHEPHERD, J., concurred.

M. J. KELLY, P.J. *(dissenting)*. Defendant was charged with four counts arising out of an armed robbery at a store in Erie, Michigan, in which a cash register and three individuals were robbed. He was sentenced to concurrent terms of from twenty-five to seventy-five years on each count upon a plea of nolo contendere.

Presumably, before pleading, defendant's counsel computed the sentence range from the Supreme Court's sentencing guidelines which would have predicted from the sentencing information report a guideline sentence minimum range of sixty to ninety-six months (five to eight years). At sentencing, the defendant and his counsel indicated satisfaction with the guidelines computations and had no objection to the presentence report. The prosecutor was silent so it is presumed that he also concurred. This defendant was incarcerated and under sentence of from thirteen to twenty years in state prison for convictions of delivery of heroin occurring in 1983 and 1984. These charges did not trigger consecutive sentencing consequences.

We are not privy to the defendant's private conversations with his attorney, but the question

is inexorably forced on the reviewer: Why would an informed defense attorney succumb to a prosecutor's plea agreement that he would recommend that the defendant's greatest minimum sentence be no more than twenty-five years when the maximum recommended minimum of the guidelines is eight years?

What's going on out there? It's difficult to make sense out of substantial sentence departures. Beyond peradventure much collective wisdom must have worked its way into the gestation process of which the sentence guidelines were born. It is estimated that the guidelines are followed in over ninety percent of the cases. But there appears to persist some unjustified disparity. Should there be a profound practical difference between a double digit mandatory minimum indeterminate sentence and a life sentence? We have ordered an evidentiary hearing in *People v Hurst,* 155 Mich App 573; 400 NW2d 685 (1986), in an attempt to get some enlightenment. We know that the lifer law, MCL 791.234(4); MSA 28.2304(4), is not precisely understood by the bench and bar. We are determined to track how it is applied.

I have suggested in *People v Richard Johnson,* 146 Mich App 809; 381 NW2d 424 (1985), that an actual minimum sentence more than two times greater than the highest recommended minimum might be an arbitrary point for having a shocked conscience. As I continue to flounder, I lean to the conclusion that a judiciary cannot assume responsibility for determining what criminals should be permanently incarcerated. The Department of Corrections and the parole board take more frequent temperatures. What is the purpose of an indeterminate sentence except to recognize that some convicts will turn around and some will not? Hard life has been a legislative prerogative. The lifer

law requires the exercise of the parole board's discretion. Individual judges, no matter how well intentioned, cannot arrogate to themselves the awesome arithmetic for mortal durance.

For want of a more meaningful mechanism for handling these matters, and bereft of inspiration, I'm going to say that my conscience is shocked under *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), by the trial court's sentence which exceeds triple the guidelines recommended highest minimum without an individualized, convincing explanation other than to denigrate the guidelines and to restate principles which are themselves the criteria on which the guidelines were based.

I would remand for resentencing.